1  **CHRISTENSEN JAMES & MARTIN**
   KEVIN B. CHRISTENSEN, ESQ.
2  Nevada Bar No. 000175
   SARA D. COPE, ESQ.
3  Nevada Bar No. 10329
   7440 W. Sahara Ave.
4  Las Vegas, NV 89117
   Tel.: (702) 255-1718
5  Facsimile: (702) 255-0871
   *Attorneys for Plaintiff*
6
                        **UNITED STATES DISTRICT COURT**
7
                             **DISTRICT OF NEVADA**
8

9   IRELAND BANK, a foreign corporation,          Case No.:

10                      Plaintiff,                 Dept. No.:

11  vs.

12  MARS DKI, LLC, a Nevada limited liability
    company dba MARS RESTORATION, LLC dba
13  MARS DKI fka MITIGATION AND REPAIR            **COMPLAINT**
    SOLUTIONS, INC. dba MARS RESTORATION;
14  McTHOMAS S. WIDEEN, an individual; DENISE
    J. WIDEEN, an Individual; DISASTER CLEAN-UP
15  CONSTRUCTION, INC. dba RESTOTECH
    WATER & FIRE DAMAGE RESTORATION
16  COMPANY dba RESTOTECH DKI dba DKI
    RESTOTECH, a foreign corporation; GINO
17  WIDEEN, an individual; RAYMIE WIDEEN, an
    individual; CONTRACTORS BONDING &
18  INSURANCE COMPANY, an authorized surety;
    MARJORIE LAMB, an individual; CBRE
19  TECHNICAL SERVICES, LLC dba BUILDING
    TECHNOLOGY ENGINEERS OF NORTH
20  AMERICA, LLC, a foreign limited liability
    company; MARY ANN CALDARULO, an
21  individual; SUN CITY SUMMERLIN
    NEIGHBORHOOD MAINTENANCE
22  ASSOCIATION, INC., a Nevada non-profit
    cooperative corporation; NEST INTERNATIONAL,
23  a foreign corporation; HAND PROPERTY
    MANAGEMENT COMPANY, a Nevada non-profit
24  corporation; ARGUS CONSTRUCTION, INC., a
    Nevada corporation; PREMIER INSTALLATION
25  CORPORATION, a Nevada corporation; ENERGY
    REO SOLUTIONS, a foreign corporation; CLARK
26  COUNTY WATER RECLAMATION DISTRICT, a
    quasi-governmental political subdivision of the State
27  of Nevada; GINA DENNEY, an individual;

28

*(left margin, vertical text)* **CHRISTENSEN JAMES & MARTIN**
7440 W. SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

ALPINE WATER SYSTEMS, LLC, a Nevada limited liability company; AHEARN TENNIS MANAGEMENT GROUP OF NEVADA, L.L.C. dba INTERNATIONAL TENNIS CENTRE LAS VEGAS, a Nevada limited liability company; WESTERN SURETY COMPANY, an authorized surety; MICHAEL LEE PETERSON; an individual; AMERICAN CONTRACTORS INDEMNITY COMPANY, an authorized surety; OLD REPUBLIC INSURANCE COMPANY, an authorized insurance company; CINTHIA VINCENT, an individual; ZEBENAY WORKNEH, an individual; JOHN DOES I-XV; ROE ENTITIES, I-XV,

Defendants.

COMES NOW, the above-named Plaintiff, Ireland Bank (the "Plaintiff" or "Bank"), by and through its attorneys, Christensen James & Martin, and for its causes of action against the above-named Defendants, asserts, alleges and complains as follows:

**I.**

**JURISDICTION & VENUE**

1.      The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and the action is between citizens of different States.

2.      This Court has pendant jurisdiction over all other ancillary causes of action pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and/or property giving rise to this Complaint occurred in this judicial district.

**II.**

**PARTIES**

4.      Plaintiff is an Idaho Bank organized under the laws of the State of Idaho with a principal place of business in the State of Idaho.

5.      At all times material herein, Defendant MARS DKI, LLC dba MARS RESTORATION, LLC dba MARS DKI, has been and is a Nevada limited liability company, formerly known as MITIGATION AND REPAIR SOLUTIONS, INC. dba MARS RESTORATION,

1    a Nevada corporation (collectively "MARS"), with a principal place of business in the State of

2    Nevada and a licensed Nevada Contractor authorized to conduct business in Clark County, Nevada.

3         6.    At all times material herein, Defendants MARS DKI, LLC; MARS RESTORATION,

4    LLC; MARS DKI; MITIGATION AND REPAIR SOLUTIONS, INC;   and MARS

5    RESTORATION, and each of them, were the agent, partner, employee, successor and/or alter-ego

6    of each other, and in doing the things herein alleged, were acting within the course and scope of said

7    agency, partnership or relation, with the permission and consent of their co-defendants, and that each

8    of them were working as a single entity, enterprise, employer and business in fact.

9         7.    At all times material herein, Defendant McTHOMAS S. WIDEEN ("M. Wideen")

10   was or is a resident of Clark County, Nevada.

11        8.    At all times material herein, Defendant DENISE J. WIDEEN ("D. Wideen") was or

12   is a resident of Clark County, Nevada.

13        9.    At all times material herein, Defendant DISASTER CLEAN-UP CONSTRUCTION,

14   INC. dba RESTOTECH WATER & FIRE DAMAGE RESTORATION COMPANY dba

15   RESTOTECH DKI dba DKI RESTOTECH ("Restotech") has been and is a California corporation

16   with a principal place of business in the State of California and a licensed California contractor that

17   is authorized to conduct business in Clark County, Nevada.

18        10.   At all times material herein, Defendants DISASTER CLEAN-UP

19   CONSTRUCTION, INC., RESTOTECH WATER & FIRE DAMAGE RESTORATION

20   COMPANY, RESTOTECH DKI and DKI RESTOTECH, and each of them, were the agent, partner,

21   employee, successor and/or alter-ego of each other, and in doing the things herein alleged, were

22   acting within the course and scope of said agency, partnership or relation, with the permission and

23   consent of their co-defendants, and that each of them were working as a single entity, enterprise,

24   employer and business in fact.

25        11.   At all times material herein, Defendant GINO WIDEEN ("G. Wideen") is or was a

26   resident of Clark County, Nevada.

27        12.   At all times material herein, Defendant RAYMIE WIDEEN ("R. Wideen") is or was

28   a resident of Clark County, Nevada.

13.     At all times material herein, Defendant CONTRACTORS BONDING & INSURANCE COMPANY ("CBIC") has been and is a Washington corporation with a principal place of business in the State of Washington that is authorized to conduct business as a surety in the State of Nevada.

14.     At all times material herein, Defendant MARJORIE LAMB ("M. Lamb") is or was a resident of Clark County, Nevada.

15.     At all times material herein, Defendant CBRE TECHNICAL SERVICES, LLC dba BUILDING TECHNOLOGY ENGINEERS OF NORTH AMERICA, LLC ("CBRE") is or was a Delaware limited liability company with a principal place of business in the State of Texas that is authorized to conduct business in Clark County, Nevada.

16.     At all times material herein, Defendant MARY ANN CALDARULO ("M. Caldarulo") is or was a resident of Clark County, Nevada.

17.     At all times material herein, Defendant SUN CITY SUMMERLIN NEIGHBORHOOD MAINTENANCE ASSOCIATION, INC. ("Sun City") has been and is a Nevada non-profit cooperative corporation with a principal place of business in the State of Nevada that is authorized to conduct business in Clark County, Nevada.

18.     At all times material herein, Defendant NEST INTERNATIONAL ("NEST") has been and is a foreign corporation with a principal place of business in the State of New Jersey that is authorized to conduct business in Clark County, Nevada.

19.     At all times material herein, Defendant HAND PROPERTY MANAGEMENT COMPANY ("HPM") has been and is a Nevada non-profit corporation with a principal place of business in the State of Nevada that is authorized to conduct business in Clark County, Nevada.

20.     At all times material herein, Defendant ARGUS CONSTRUCTION, INC. ("Argus") has been and is a Nevada corporation with a principal place of business in the state of Nevada and a licensed Nevada Contractor that is authorized to conduct business in Clark County, Nevada.

21.     At all times material herein, Defendant PREMIER INSTALLATION CORPORATION ("Premier") has been and is a Nevada corporation with a principal place of business in the State of Nevada that is authorized to conduct business in Clark County, Nevada.

-4-

22.     At all times material herein, Defendant ENERGY REO SOLUTIONS ("ERS") has been and is a Minnesota corporation with a principal place of business in the State of Minnesota that is authorized to conduct business in Clark County, Nevada.

23.     At all times material herein, Defendant CLARK COUNTY WATER RECLAMATION DISTRICT ("County") has been and is a quasi-governmental political subdivision of the State of Nevada.

24.     At all times material herein, Defendant GINA DENNEY ("G. Denney") is or was a resident of Clark County, Nevada.

25.     At all times material herein, Defendant ALPINE WATER SYSTEMS, LLC ("Alpine") has been or is a Nevada limited liability company with a principal place of business in the State of Nevada and a Nevada licensed contractor that is authorized to conduct business in Clark County, Nevada.

26.     At all times material herein, Defendant WESTERN SURETY COMPANY ("WSC") has been or was a South Dakota corporation with a principal place of business in the State of South Dakota that is authorized to conduct business as a surety in Clark County, Nevada.

27.     At all times material herein, Defendant MICHAEL LEE PETERSON ("M. Peterson"), is or was a resident of Clark County, Nevada.

28.     At all times material herein, Defendant AMERICAN CONTRACTORS INDEMNITY COMPANY ("ACIC") has been or was a California corporation with a principal place of business in the State of California that is authorized to conduct business as a surety in Clark County, Nevada.

29.     At all times material herein, Defendant OLD REPUBLIC INSURANCE COMPANY ("ORIC") has been or was a Pennsylvania corporation with a principal place of business in the State of Pennsylvania that is authorized to conduct business as a surety in Clark County, Nevada.

30.     At all times material herein, Defendant AHEARN TENNIS MANAGEMENT GROUP OF NEVADA, L.L.C. dba INTERNATIONAL TENNIS CENTRE LAS VEGAS ("International Tennis") has been or is a Nevada limited liability company with a principal place of business in the State of Nevada that is authorized to conduct business in Clark County, Nevada.

-5-

31.     At all times material herein, Defendant Cinthia Vincent ("C. Vincent") was and is a resident of Clark County, Nevada.

32.     At all times material herein, Defendant Zebenay Workneh ("Z. Workneh") was and is a resident of Clark County, Nevada.

33.     The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of Defendants JOHN DOES I-XV and ROE ENTITIES I-XV, inclusive, are presently unknown to the Bank.  Said Defendants are named herein by fictitious names, but may be responsible or liable to the Bank by virtue of the actions hereinafter described and the Bank reserves the right to amend the Complaint to insert any additional charging allegations, together with the true identities and capacities, when the same have been ascertained, including but not limited to claims arising under N.R.S. 624.273.

**III.**

**<u>GENERAL ALLEGATIONS</u>**

**A.     The Loans, Notes, Modification Agreements, Security Agreements, Guaranty, Collateral and Financing Statements in Favor of the Bank**

**<u>Loan Numbered 3032002664 ("Loan A")</u>**

34.     On or about September 11, 2006, the Bank entered into commercial loan numbered 3032002664 with Defendants MARS, M. Wideen and D. Wideen (collectively "MARS Defendants") for a revolving line of credit in the amount of One Hundred Forty Thousand Five Hundred Dollars ($140,500.00), in exchange for the MARS Defendants' written promise to repay the loan with interest ("Loan A").  A true and correct copy of Loan A is attached hereto and incorporated herein as Exhibit 1.

35.     Each of the MARS Defendants executed the promissory note for Loan A.  M. Wideen signed the note in his individual capacity and as President of MARS and D. Wideen signed the note in her individual capacity.

36.     Under the original terms of Loan A, the MARS Defendants were required to make monthly interest payments to the Bank on the 15th and 30th days of each month and a final lump sum payment of the remaining balance due on September 10, 2007 ("Original Loan A Due

-6-

1   Date").

2   　　　37.　　Loan A provides that failure to make timely payments will result in default and

3   acceleration of the note on demand.

4   　　　38.　　Loan A was secured by security agreements dated June 29, 2005 and August 28,

5   2005 ("Commercial Security Agreements") as follows:

6   　　　THIS LOAN IS SECURED WITH COMMERCIAL SECURITY AGREEMENTS
    　　　DATED 29 JUNE 2005 EXECUTED BY MITIGATION AND REPAIR
7   　　　SOLUTIONS, INC. AND MCTHOMAS WIDEEN AND DENISE WIDEEN IN
    　　　FAVOR OF FROSTLINE BUSINESS GROUP, INC. AND SAID SECURITY
8   　　　AGREEMENTS ASSIGNED TO IRELAND BANK.  FURTHER SECURED BY
    　　　COMMERCIAL SECURITY AGREEMENT IN FAVOR OF IRELAND BANK
9   　　　DATED 8 AUGUST 2005 ALSO EXECUTED BY MITIGATION AND REPAIR
    　　　SOLUTIONS INC AND MCTHOMAS WIDEEN AND DENISE WIDEEN.

10  　　　39.　　The Commercial Security Agreements grant and assign security interests in

11  various assets of the MARS Defendants, including accounts, inventory, equipment, instruments

12  and chattel paper, general intangibles, documents, government payments and programs,

13  investment property and deposit accounts ("Collateral").  True and correct copies of the

14  Commercial Security Agreements are attached hereto and incorporated herein as Exhibit 2.

15  　　　40.　　The Bank properly perfected its interest in the Collateral by recording UCC-1

16  Financing Statements and Amendments thereto dated July 16, 2003, August 12, 2005, August 19,

17  2005 and April 9, 2008 ("Financing Statements").  True and correct copies of the Financing

18  Statements are attached hereto and incorporated herein as Exhibit 3.

19  　　　41.　　The payment and performance obligations under Loan A were further expressly

20  guarantied by M. Wideen and D. Wideen on July 25, 2005 ("Guaranty").  A true and correct copy

21  of the Guaranty is attached hereto and incorporated herein as Exhibit 4.

22  　　　42.　　The MARS Defendants were unable to meet the Original Loan A Due Date and

23  required an increase in their revolving operating line of credit.

24  　　　43.　　To extend the Original Loan A Due Date and increase funds available to the

25  MARS Defendants under Loan A, the Bank entered into various loan modification agreements

26  with the MARS Defendants the terms of which are briefly summarized below.

27  / / /

28

**Loan A Modification Agreements**

44.     On April 15, 2009, the Bank entered into a loan modification agreement with the MARS Defendants on Loan A.  The modification agreement modified the terms of the loan by increasing the maximum loan amount under the note to One Hundred Ninety Thousand Five Hundred Dollars ($190,500.00).  A true and correct copy of the modification agreement dated April 15, 2009 is attached hereto and incorporated herein as Exhibit 5.

45.     On September 29, 2009, the Bank entered into a second loan modification agreement with the MARS Defendants on Loan A.  Among other things, the modification agreement extended the maturity date on the loan to November 30, 2009.  A true and correct copy of the modification agreement dated September 29, 2009 is attached hereto and incorporated herein as Exhibit 6.

46.     On November 30, 2009, the Bank entered into a third loan modification agreement with the MARS Defendants on Loan A.  Among other things, the modification agreement extended the maturity date on the loan to November 30, 2010.  A true and correct of the modification agreement dated November 30, 2009 is attached hereto and incorporated herein as Exhibit 7.

47.     On December 16, 2010, the Bank entered into a fourth loan modification agreement with the MARS Defendants on Loan A.  The Modification Agreement extended the terms of the maturity date on the loan to December 30, 2011 ("Extended Loan A Maturity Date").  A true and correct copy of the modification agreement dated December 16, 2010 is attached hereto and incorporated herein as Exhibit 8.

**Loan Numbered 3032002665 ("Loan B")**

48.     On or about September 11, 2006, the Bank entered into commercial loan numbered 30320028665 with the MARS Defendants in the sum of Three Hundred Thirty Nine Thousand Four Hundred Thirty One and 63/100 Dollars ($339,431.63) in exchange for the MARS Defendants' written promise to repay the loan with interest ("Loan B").  A true and correct copy of Loan B is attached hereto and incorporated herein as Exhibit 9.

49.     Each of the MARS Defendants executed the promissory note for Loan B.  M.

Wideen signed the note in his individual capacity and as President of MARS and D. Wideen signed the note in her individual capacity.

50.     Under the original terms of Loan B, the MARS Defendants were required to make monthly principal and interest payments on the 10th day of each month with a final lump sum payment of the remaining balance due on September 10, 2007 ("Original Loan B Due Date").

51.     Loan B provides that failure to make timely payments to the Bank will result in default and acceleration of the loan on demand.

52.     Loan B was secured by the Commercial Security Agreements as follows:

THIS LOAN IS SECURED WITH COMMERCIAL SECURITY AGREEMENTS DATED 29 JUNE 2005 EXECUTED BY MITIGATION AND REPAIR SOLUTIONS, INC. AND MCTHOMAS WIDEEN AND DENISE WIDEEN IN FAVOR OF FROSTLINE BUSINESS GROUP, INC. AND SAID SECURITY AGREEMENTS ASSIGNED TO IRELAND BANK. FURTHER SECURED BY COMMERCIAL SECURITY AGREEMENT IN FAVOR OF IRELAND BANK DATED 8 AUGUST 2005 ALSO EXECUTED BY MITIGATION AND REPAIR SOLUTIONS INC AND MCTHOMAS WIDEEN AND DENISE WIDEEN.

53.     The Commercial Security Agreements grant and assign security interests in the Collateral.

54.     The Bank properly perfected its interest in the Collateral by recording the Financing Statement.

55.     The payment and performance obligations under Loan B were further secured by the Guaranty.

56.     The MARS Defendants were unable to meet the Original Loan B Due Date.

57.     To extend the Original Loan B Due Date, the Bank entered into various loan modification agreements with the MARS Defendants the terms of which are briefly summarized below.

**Loan B Modification Agreements**

58.     On September 29, 2009, the Bank entered into a loan modification agreement on Loan B with the MARS Defendants.  Among other things, the modification agreement extended the maturity date on the loan to November 30, 2009.  All other terms remained the same.  A true and correct copy of the modification agreement dated September 29, 2009 is

attached hereto and incorporated herein as Exhibit 10.

59.     On November 30, 2009, the Bank entered into a second loan modification agreement on Loan B with the MARS Defendants.  Among other things, the modification agreement extended the maturity date on the loan to November 30, 2010.  A true and correct copy of the modification agreement dated November 30, 2009 is attached hereto and incorporated herein as Exhibit 11.

60.     On July 10, 2010, the Bank entered into a third loan modification agreement on Loan B with the MARS Defendants.  The modification agreement modified the payment terms on the loan to interest only payments for the months of July 2010 through October 2010.  A true and correct copy of the modification agreement dated July 10, 2010 is attached hereto and incorporated herein as Exhibit 12.

61.     On December 16, 2010, the Bank entered into a fourth loan modification agreement on Loan B with the MARS Defendants.  Among other things, the modification agreement extended the terms of the maturity date under the loan to July 30, 2011 ("Extended Loan B Maturity Date").  All other terms remained the same.  A true and correct copy of the modification agreement dated December 16, 2010 is attached hereto and incorporated herein as Exhibit 13.

**B.     The Transaction Documents**

62.     Loan A and its subsequent modification agreements, Loan B and its subsequent modification agreements, the Commercial Security Agreements, the Financing Statements, the Guaranty and Exhibits 1 through 13 are collectively referred to as the "Transaction Documents".

**C.     The Breach, Default and Delinquency of the MARS Defendants under the Transaction Documents**

63.     The Bank asserts that on and after February 28, 2011, the MARS Defendants breached their payment obligations under the Transaction Documents resulting in the default and acceleration of Loans A and B and the total calculated and combined delinquency sum of Two Hundred Sixty Nine Thousand Two Hundred Sixty Seven and 27/100 Dollars ($269,267.27) ("Delinquency Amount"), as of September 23, 2011.  Interest accrues on the Delinquency

1   Amount at the combined rate of Seventy and 74/100 Dollars ($70.74) per day.

2       64.    Under the terms of the Transaction Documents, the MARS Defendants are

3   obligated to pay the Bank the Delinquency Amount in full.

4       65.    The Bank is entitled to payment of the Delinquency Amount and injunctive

5   relief preventing the Collateral from transfer or encumbrance, an equitable lien, immediate

6   possession to, and foreclosure of the Collateral to satisfy the balance of the Delinquency Amount.

7       66.    Pursuant to the terms of the Transaction Documents, the Bank is entitled to

8   recover its attorney's fees and court costs incurred herein, including the cost of the Bank's

9   actions to enforce the provisions and terms of the Transaction Documents.

10  **D.    The Unauthorized Transfer of Collateral by the MARS Defendants to Restotech**

11      67.    The MARS Defendants made sales or transfers of the Collateral to Restotech.

12      68.    The MARS Defendants failed to obtain the proper authorization of the Bank prior

13  to making the sales or transfers.

14      69.    Restotech has failed to pay the Bank for the Collateral and has had the use and

15  enjoyment of the Collateral since its purchase or receipt thereof.

16      70.    Restotech claims some right, title or interest in the Collateral by virtue of its

17  purchase from the MARS Defendants, but said claimed right, title or interest is subordinate and

18  inferior to the claim of the Bank.

19  **E.    The Accounts Payable Due the MARS Defendants**

20      71.    Defendant M. Lamb is indebted to the MARS Defendants as set forth in Invoice

21  No. 110093 dated March 31, 2011 for Purchase Order No. 2011-0078-M in the amount of Five

22  Thousand Forty Six and 06/100 Dollars ($5,046.06).  Pursuant to the Transaction Documents, the

23  delinquency identified herein is properly payable to the Bank out of any and all accounts payable

24  originally due the MARS Defendants from M. Lamb, including but not limited to the invoice

25  identified herein, and the Bank is entitled to injunctive relief against M. Lamb with respect to

26  said accounts payable.

27      72.    Defendant CBRE is indebted to the MARS Defendants as set forth in Invoice No.

28  110094 dated March 31, 2011 for Purchase Order No. 2011-0080-CL in the amount of Three

1  Hundred Fifteen and 12/100 Dollars ($315.12).  Pursuant to the Transaction Documents, the

2  delinquency identified herein is properly payable to the Bank out of any and all accounts payable

3  originally due the MARS Defendants from CBRE, including but not limited to the invoice

4  identified herein, and the Bank is entitled to injunctive relief against CBRE with respect to said

5  accounts payable.

6       73.  Defendant M. Caldarulo is indebted to the MARS Defendants as set forth in

7  Invoice No. 110095 dated March 31, 2011 for Purchase Order No. 2011-0085-R in the amount of

8  Six Hundred Dollars ($600.00).  Pursuant to the Transaction Documents, the delinquency

9  identified herein is properly payable to the Bank out of any and all accounts payable originally

10  due the MARS Defendants from M. Caldarulo, including but not limited to the invoice identified

11  herein, and the Bank is entitled to injunctive relief against M. Caldarulo with respect to said

12  accounts payable.

13       74.  Defendant Sun City is indebted to the MARS Defendants as set forth in Invoice

14  Nos. 110096 and 110110 dated March 31, 2011 and April 201, 2011 for Purchase Order Nos.

15  2011-0076-R and 2011-0096-R in the total amount of at least Two Hundred Twenty Five and

16  85/100 Dollars ($225.85).  Pursuant to the Transaction Documents, the delinquency identified

17  herein is properly payable to the Bank out of any and all accounts payable originally due the

18  MARS Defendants from Sun City, including but not limited to the invoices identified herein, and

19  the Bank is entitled to injunctive relief against Sun City with respect to the value of said accounts

20  payable.

21       75.  Defendant NEST is indebted to the MARS Defendants as set forth in Invoice No.

22  11085 dated March 22, 2011 for Purchase Order Nos. WO:6956239 and 2011-0074-R in the

23  amount of Five Thousand Fifty Dollars ($5,050.00).  Pursuant to the Transaction Documents, the

24  delinquency identified herein is properly payable to the Bank out of any and all accounts payable

25  originally due the MARS Defendants from NEST, including but not limited to the invoice

26  identified herein, and the Bank is entitled to injunctive relief against NEST with respect to the

27  value of said accounts payable.

28       76.  Defendant HPM is indebted to the MARS Defendants as set forth in Invoice Nos.

110089, 110090, 110092, 110088, 110079 dated March 22, 2011, March 31, 2011 and March 10, 2011 for Purchase Order Nos. 2011-0077-E, 2011-0069M, 2011-0077-R, 2011-0073-CL and 2011-0065-E in the total amount of Ten Thousand Four Hundred Twelve and 52/100 Dollars ($10,412.52). Pursuant to the Transaction Documents, the delinquency identified herein is properly payable to the Bank out of any and all accounts payable originally due the MARS Defendants from HPM, including but not limited to the invoices identified herein, and the Bank is entitled to injunctive relief against HPM with respect to the value of said accounts payable.

77. Defendant Argus is indebted to the MARS Defendants as set forth in Invoice No. 110071 dated March 3, 2011 for Purchase Order No. 2011-0057-CL in the amount of Three Hundred Sixty Eight Dollars ($368.00). Pursuant to the Transaction Documents, the delinquency identified herein is properly payable to the Bank out of any and all accounts payable originally due the MARS Defendants from Argus, including but not limited to the invoice identified herein, and the Bank is entitled to injunctive relief against Argus with respect to the value of said accounts payable.

78. Defendant Premier is indebted to the MARS Defendants as set forth in Invoice Nos. 110073-146 and 110087-146 dated March 8, 2011 and March 22, 2011 for Purchase Order Nos. E2750253, 2011-0049-E and 2011-0049-R in the total amount of Twelve Thousand Seven Hundred Fifty-Six and 47/100 Dollars ($12,756.47). Pursuant to the Transaction Documents, the delinquency identified herein is properly payable to the Bank out of any and all accounts payable originally due the MARS Defendants from Premier, including but not limited to the invoices identified herein, and the Bank is entitled to injunctive relief against Premier with respect to the value of said accounts payable.

79. Defendant ERS is indebted to the MARS Defendants as set forth in Invoice Nos. 110075 and 110065 dated March 8, 2011 and February 24, 2011 for Purchase Order Nos. 2011-0066-R and 2011-0059-E in the total amount of Four Thousand Three Hundred Thirty-Three and 37/100 Dollars ($4,333.37). Pursuant to the Transaction Documents, the delinquency identified herein is properly payable to the Bank out of any and all accounts payable originally due the MARS Defendants from ERS, including but not limited to the invoices identified herein, and the

1    Bank is entitled to injunctive relief against ERS with respect to the value of said accounts

2    payable.

3          80.     Defendant County is indebted to the MARS Defendants as set forth in Invoice No.

4    110063 dated February 24, 2011 for Purchase Order Nos. EKT6557 and 2011-0054-CL in the

5    amount of Eight Hundred Ninety Five and 25/100 Dollars ($895.25).  Pursuant to the Transaction

6    Documents, the delinquency identified herein is properly payable to the Bank out of any and all

7    accounts payable originally due the MARS Defendants from the County, including but not

8    limited to the invoices identified herein, and the Bank is entitled to injunctive relief against the

9    County with respect to the value of said accounts payable.

10         81.     Defendant G. Denney is indebted to the MARS Defendants as set forth in Invoice

11   No. 100535 dated July 31, 2010 for Purchase Order No. 2010-0207-R in the amount of One

12   Hundred Sixty Two and 60/100 Dollars ($162.60).  Pursuant to the Transaction Documents, the

13   delinquency identified herein is properly payable to the Bank out of any and all accounts payable

14   originally due the MARS Defendants from G. Denney, including but not limited to the invoice

15   identified herein, and the Bank is entitled to injunctive relief against G. Denney with respect to

16   the value of said accounts payable.

17         82.     Defendant Alpine is indebted to the MARS Defendants as set forth in Invoice No.

18   100550 dated August 17, 2010 in the amount of Eight Hundred Thirty Six and 04/100 Dollars

19   ($836.00).  Pursuant to the Transaction Documents, the delinquency identified herein is properly

20   payable to the Bank out of any and all accounts payable originally due the MARS Defendants

21   from Alpine, including but not limited to the invoice identified herein, and the Bank is entitled to

22   injunctive relief against Alpine with respect to the value of said accounts payable.

23         83.     Defendant International Tennis is indebted to the MARS Defendants as set forth

24   in Invoice No. 110111 dated April 27, 2011 for Purchase Order No. 2011-0100-E in the amount

25   of Two Hundred Fifty Dollars ($250.00).  Pursuant to the Transaction Documents, the

26   delinquency identified herein is properly payable to the Bank out of any and all accounts payable

27   originally due the MARS Defendants from International Tennis, including but not limited to the

28   invoice identified herein, and the Bank is entitled to injunctive relief against International Tennis

-14-

1    with respect to the value of said accounts payable.

2    **F.      The Bonds and Indemnifications at Issue**

3          84.     Defendant CBIC issued contractor's licensing bond to MARS as Bond No.

4    NB7564 in the amount of Ten Thousand Dollars ($10,000.00) ("CBIC Bond").  The Bank

5    believes that additional bonds may have been issued by CBIC to MARS, and the Bank reserves

6    the right to amend its Complaint to insert additional charging allegations against such other

7    bonds and/or companies that issued them.  The delinquency identified herein is properly payable

8    out of the CBIC Bond.

9          85.     On September 25, 2001, Defendants G. Wideen and R. Wideen, as guarantors and

10   as a surety, agreed to act as an indemnitor for claims made against MARS and for claims arising

11   under N.R.S. 624.273, including, but not limited to, injury caused by MARS in the performance

12   of a contract.  The Bank has been injured by MARS for its failure to perform under the contracts

13   at issue in this case.  The delinquency identified herein is properly payable by G. Wideen and R.

14   Wideen pursuant to the indemnification agreement.

15         86.     Defendant WSC issued a contractor's licensing bond to Argus as Bond No.

16   71021574 in the amount of Fifteen Thousand Dollars ($15,000.00) ("WSC Bond").  The Bank

17   believes that additional bonds may have been issued by WSC or other insurance/bonding

18   companies to Argus, and the Bank reserves the right to amend its Complaint to insert additional

19   charging allegations against such other bonds and/or companies that issued them.  The

20   delinquency identified herein is properly payable out of the WSC Bond.

21         87.     On June 4, 2001, Defendant M. Peterson as guarantor and as a surety, agreed to

22   act as an indemnitor for claims made against Argus and for claims arising under N.R.S. 624.273,

23   including, but not limited to, injury caused by Argus in the performance of a contract.  The Bank

24   has been injured by Argus for its failure to perform under the contracts at issue in this case.  The

25   delinquency identified herein is properly payable by M. Peterson pursuant to the indemnification

26   agreement.

27         88.     Defendant ACIC issued contractor's licensing bond to Restotech as Bond No.

28   10131575 ("ACIC Bond") in the amount of Twelve Thousand Five Hundred Dollars

1  ($12,500.00).  The Bank beleives that additional bonds may have been issued by ACIC or other

2  insurance/bonding companies to Restotech, and the Bank reserves the right to amend its

3  Complaint to insert additional charging allegations against such other bonds and/or companies

4  that issued them.  The delinquency identified herein is properly payable out of the ASIC bond.

5         89.    Defendant ORIC issued a contractor's licensing bond to Alpine as Bond No.

6  1227245 in the amount of One Thousand Dollars ($1,000.00) ("ORIC Bond").  The Bank

7  believes that additional bonds may been issued by ORIC or other insurance/bonding companies

8  to Alpine, and the Bank reserves the right to amend its Complaint to insert additional charging

9  allegations against such other bonds and/or companies that issued them.  The delinquency

10  identified herein is properly payable out of the ORIC Bond.

11  **G.     The Mechanics' Liens at Issue**

12         90.    The MARS Defendants were employed by Defendant Premier as restoration

13  contractors for the improvement of certain real properties purportedly owned by Defendants C.

14  Vincent at 3450 Erva Street, #146, Las Vegas, Nevada, more particularly described as Assessor's

15  Parcel Number 163-17-114-074 ("Vincent Property"), and Z. Workneh at 3450 Erva Street,

16  #246, Las Vegas, Nevada, more particularly described as Assessor's Parcel Number 163-17-114-

17  078 ("Workneh Property").

18         91.    Premier failed to pay the MARS Defendants for their work performed on the

19  Vicnent and Workneh Properties.

20         92.    On or about May 20, 2011, the MARS Defendants recorded a Mechanic's Lien in

21  the Office of the County Recorder of Clark County, Nevada against the Vincent Property as Book

22  Number 20110520 and Instrument Number 0002693 in the amount of Twelve Thousand Seven

23  Hundred Fifty Six and 47/100 Dollars ($12,756.47) ("Vincent Lien").  A true and correct copy of

24  the Vincent Lien is attached hereto and incorporated herein as Exhibit 14.

25         93.    On or about May 20, 2011, the MARS Defendants recorded a Mechanic's Lien in

26  the Office of the County Recorder of Clark County, Nevada against the Workneh Property as

27  Book Number 20110520 and Instrument Number 0002692 in the amount of Two Thousand

28  Seven Hundred Eighty Four and 02/100 Dollars ($2,784.02) ("Workneh Lien").  A true and

correct copy of the Workneh Lien is attached hereto and incorporated herein as Exhibit 15.

94.     Pursuant to the Transaction Documents, the Bank is entitled to foreclose upon the Vincent and Workneh Liens to satisfy the delinquency owed by the MARS Defendants as identified herein.

**FIRST CAUSE OF ACTION**
**[Breach of Contract - All Defendants]**

95.     The Bank herein repeats, incorporates and realleges Paragraphs 1 through 94 of its Complaint, as if set forth herein hoc verba.

96.     The MARS Defendants, and each of them, have defaulted on and breached their obligations to the Bank under the Transaction Documents, and each of the MARS Defendants are jointly and severally indebted to the Bank for the full Delinquency Amount now due and owing.

97.     The Bank has incurred attorney's fees and costs necessary to recover the amounts due and owing.

**SECOND CAUSE OF ACTION**
**[UCC Enforcement of Notes - MARS Defendants]**

98.     The Bank herein repeats, incorporates and realleges Paragraphs 1 through 97 of its Complaint, as if set forth herein hoc verba.

99.     The Bank is entitled to enforcement of the Notes in the full Delinquency Amount pursuant to the Uniform Commercial Code ("Code"), as adopted by the State of Nevada (Nevada Revised Statutes ("NRS") 104.3101 et seq.) or as may be otherwise applicable under the Code as adopted by any other State, including Idaho.

**THIRD CAUSE OF ACTION**
**[Accounting - All Defendants]**

100.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 99 of its Complaint, as if set forth herein hoc verba.

101.    The Bank is entitled to the Order of this Court directing the MARS Defendants, and each of them, to produce all relevant Transaction Document records for audit, and to complete and provide the Bank with a full, accurate and detailed accounting of the Collateral, Loans, Notes and Transaction Documents, including, but not limited to, the uses of all Loan

advances, the sale and transfer of any Collateral, the use and location of any proceeds of Collateral and the history of the credits and debits related to the Loans and Delinquency Amount.

## FOURTH CAUSE OF ACTION
### [Enforcement of Guaranties - Defendants M. Wideen and D. Wideen]

102.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 101 of its Complaint, as if set forth herein hoc verba.

103.    The Bank is entitled to a Judgment against Defendants M. Wideen and D. Wideen in the full sum of the Delinquency Amount pursuant to the terms and provisions of the Guaranty and Transaction Documents.

## FIFTH CAUSE OF ACTION
### [Injunctive Relief - All Defendants]

104.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 103 of its Complaint, as if set forth herein hoc verba.

105.    The Bank is entitled to a Preliminary Injunction and Permanent Injunction prohibiting the Defendants from any acts with respect to the Collateral in order to preserve the Bank's rights under the Transaction Documents, including, but not limited to, Orders: (i) enjoining any further encumbrance of the Collateral; (ii) enjoining any transfer, conveyance, sale, disposition, use or assignment of the Collateral or its Proceeds; and (iii) delivering possession of the Collateral to the Bank.

## SIXTH CAUSE OF ACTION
### [Claim for Priority of Interest in the Collateral - the MARS Defendants, Restotech and JOHN DOES I-XV and ROE ENTITIES I-XV]

106.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 105 of its Complaint, as if set forth herein hoc verba.

107.    The MARS Defendants breached their obligations under the Transaction Documents when it made unauthorized transfers of the Collateral to Restotech.

108.    The Bank properly perfected its interest in the Collateral when it filed the Financing Statements.

109.    Restotech failed to perform a UCC Search prior to purchasing/receiving the Collateral from the MARS Defendants, or willfully ignored the Bank's recorded security interest.

-18-

110.    The Bank's interest in the Collateral and proceeds therefrom is higher than Restotech's interest because the Bank perfected its security interest in the Collateral first.

111.    The Bank is entitled to this Court's Judgment declaring that it has first rights in the Collateral and proceeds therefrom and is entitled to injunctive relief against Restotech, including but not limited to, repossession and/or recovery of the value of the Collateral or the proceeds therefrom.

## SEVENTH CAUSE OF ACTION
### [Unjust Enrichment - All Defendants]

112.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 111 of its Complaint, as if set forth herein hoc verba.

113.    Restotech has not paid the Bank for the Collateral, yet has had the use and enjoyment of the Collateral since the transfer.

114.    The use of the Collateral without payment to the Bank constitutes an unjust enrichment of Restotech at the Bank's expense.

115.    As a result of the unjust enrichment of Restotech, the Bank has been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### [Demand for Relief on Bonds and Indemnification Agreements - Defendants CBIC, WSC, ACIC, ORIC, G. Wideen, R. Wideen, M. Peterson and JOHN DOES I-XV and ROE ENTITIES I-XV]

116.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 115 of the Complaint, as if set forth herein hoc verba.

117.    The Bank is a beneficiary under the Bonds.

118.    The conduct of MARS, Restotech, Argus and Alpine in performance of agreements was wrongful.

119.    The Bank's claims as set forth herein are covered by the Bonds.  Accordingly, any Bond proceeds should be applied to pay the Bank in satisfaction of its claims herein.

120.    Each indemnitor is liable to the Bank for the acts alleged herein.

/ / /

/ / /

-19-

### NINTH CAUSE OF ACTION
**[Enforcement of Mechanic's Liens - Defendants C. Vincent, Z. Workneh and JOHN DOES I-XV and ROE ENTITIES I-XV]**

121.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 120 of its Complaint, as if set forth herein hoc verba.

122.    The MARS Defendants were employed by Defendant Premier as restoration contractors for the improvement of real properties purportedly owned by Defendants C. Vincent and Z. Workneh.

123.    Pursuant to the agreements with Premier, the MARS Defendants made the agreed upon improvements to the Vincent and Workneh Properties with the accompanying labor, equipment and materials.

124.    Said materials and labor were incorporated into the Vincent and Workneh Properties and constitute improvements to said properties as that term is defined by N.R.S. § 108.22128.

125.    Premier failed to pay the MARS Defendants for their work performed on the Vincent and Workneh Properties.

126.    The MARS Defendants claim a statutory lien against the Vincent Property in the amount of $12,756.47 ("Vincent Lien"), plus accrued interest, costs and attorney's fees as provided by Chapter 108 of the N.R.S. for improvements to the property, which has not been paid to date.

127.    The MARS Defendants claim a statutory lien against the Workneh Property in the amount of $2,784.02 ("Workneh Lien"), plus accrued interest, costs and attorney's fees as provided by Chapter 108 of the N.R.S. for improvements to the property, which has not been paid to date.

128.    Pursuant to the Transaction Documents, the Bank is entitled to foreclose upon the Vincent and Workneh Liens to satisfy the delinquency owed by the MARS Defendants as identified herein.

129.    The Bank has complied, or is in the process of complying with, all statutory prerequisites to a foreclosure sale to satisfy the obligations incurred by the Defendants Premier,

C. Vincent and Z. Workneh.

130.    The Bank is entitled to this Court's Judgment pursuant to N.R.S. § 108.239 authorizing enforcement of the Vincent and Workneh Liens by foreclosure and sale to recover the sum of the liens, with attorney's fees, prejudgment interest and costs incurred herein pursuant to N.R.S. §§ 18.005, 18.010, 30.120 and 108 et seq.

## TENTH CAUSE OF ACTION
**[Declaratory Relief - All Defendants]**

131.    The Bank herein repeats, incorporates and realleges Paragraphs 1 through 130 of its Complaint, as if set forth herein hoc verba.

132.    This Action is brought pursuant to the Uniform Declaratory Judgments Act, as set forth in N.R.S. 30.010 through N.R.S. 30.160.

133.    The Bank is entitled to a Declaratory Judgment establishing all parties' relative rights and obligations under the Transaction Documents, Bonds and Indemnification Agreements and Collateral and to rank their priorities.

134.    The Bank is entitled to a Declaratory Judgment enforcing the Vincent and Workneh Liens and authorizing a sale of the Vincent and Workneh Properties to satisfy the Mars Defendants delinquency identified herein.

WHEREFORE, the Bank prays for this Court's Order and Judgment against the Defendants, and each of them, as follows:

1.    For damages in an amount to be proven at trial;

2.    For injunctive relief directing payment to the Bank and prompt delivery and possession of the Collateral;

3.    For prejudgment and post-judgment interest accrued on the Delinquency Amount at the daily combined rate of $70.74 from February 15, 2011;

4.    For an accounting;

5.    For judicial foreclosure and sale of the Collateral to satisfy the Delinquency Amount;

6.    For a Declaratory Judgment determining the Bank's rights and obligations under the Transaction Documents, Collateral, Bonds and Indemnification Agreements;

7.      For a Declaratory Judgment enforcing the Vincent and Workneh Liens and authorizing a sale of the Vincent and Workneh Properties to satisfy the Delinquency Amount;

8.      For reasonable attorney's fees and costs; and

9.      For such other and further relief as the Court may deem proper under the circumstances.

DATED this 5th day of October, 2011.

CHRISTENSEN JAMES & MARTIN

By:      */s/ Sara D. Cope*
        Sara D. Cope, Esq.
        Nevada Bar No. 10329
        7440 W. Sahara Ave.
        Las Vegas, Nevada 89117
        *Attorneys for Plaintiff*